UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RODNEY CRAIG MOUNTJOY,
    Plaintiff,

vs.                              Case No.:  3:20cv4685/LAC/EMT

CENTURION OF FLORIDA, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Rodney Craig Mountjoy (Mountjoy), an inmate of the Florida Department of Corrections (FDOC) proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint (ECF No. 1).  Presently before the court is Mountjoy's Second Amended Complaint (ECF No. 31).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by Mountjoy, it is the opinion of the undersigned that his claims should be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.  BACKGROUND

Mountjoy sues three Defendants in this case: (1) Centurion of Florida, the provider of medical services to inmates at FDOC institutions; (2) Dr. Laubaugh, the Chief Health Officer at Taylor Correctional Institution; and (3) F. Denmark, the Health Services Administrator (HSA) at Taylor C.I. (ECF No. 31 at 1–2).[1] Mountjoy claims that Defendants were deliberately indifferent to his medical needs, in violation of the Eighth and Fourteenth Amendments (*id.* at 5, 12–15). He seeks injunctive relief and monetary damages (*id.* at 12, 16–17).

II.  RELEVANT LEGAL STANDARDS

   A.  **Statutory Screening Standard**

Because Mountjoy is a prisoner proceeding in forma pauperis, the court must dismiss this case if the court determines it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). The statutory language "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," therefore, dismissals for failure to state a claim are governed by the same standard as Rule

---

[1] The court refers to the page numbers automatically assigned by the court's electronic filing system.

12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). The allegations of the complaint are taken as true and construed in the light most favorable to Plaintiff. *See Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997). The court may consider documents attached to a complaint or incorporated into the complaint by reference, as well as matters of which a court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Saunders v. Duke*, 766 F.3d 1262, 1272 (11th Cir. 2014).

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation marks and citation omitted). And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation marks and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

### B.     Eighth Amendment Standard

The Eighth Amendment prohibits the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend VIII. Under this Amendment, the "[f]ederal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). As particularly relevant here, the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments

when they display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A deliberate-indifference claim entails both an objective and a subjective component. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). First, the inmate must establish "an objectively serious medical need"—that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"—that, "if left unattended, poses a substantial risk of serious harm." *Id.* (alteration adopted) (quotation omitted). Second, the inmate must prove that prison officials acted with deliberate indifference to that need by showing (1) that they had "subjective knowledge of a risk of serious harm" and (2) that they "disregard[ed]" that risk (3) by conduct that was "more than mere negligence." *Id.*

"A prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). The Eleventh Circuit has held, for instance, that the Constitution does not require that the medical care provided to prisoners be "perfect, the best obtainable, or even very good." *Harris*, 941 F.2d at 1510 (quotation omitted). Rather, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent,

inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* at 1505 (quotation omitted). The Eleventh Circuit has also emphasized—as have its sister circuits—that "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Id.*; *accord, e.g., Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018) ("We have consistently held that prison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants."); *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (en banc) ("[The Eighth Amendment] does not impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing.").

III. DISCUSSION

The facts included in this section are taken from Mountjoy's Second Amended Complaint (ECF No. 31). Mountjoy also requests that the court consider the exhibits he submitted with his initial Complaint (*see* ECF No. 31 at 18). As previously noted, the court may consider documents attached to a complaint or incorporated into the complaint by reference, *see Tellabs, Inc.,* 551 U.S. at 322; *Saunders*, 766 F.3d at

1272; therefore, the court will consider the documents attached to Mountjoy's Complaint.

Mountjoy complains that Defendants were deliberately indifferent to his medical needs from June 2, 2018 to September of 2019, while he was housed at Taylor C.I. (*see* ECF No. 31 at 7). Mountjoy identifies two conditions which allegedly required medical treatment: first, removal of a contact lens from his eye; and second, an allergic reaction (*id.* at 5–11).

A.  **Contact Lens**

Mountjoy alleges he suffers from keratoconus, meaning, the front of his eye is shaped like an egg or cone (ECF No. 31 at 8). Mountjoy alleges he complained to Dr. Laubaugh that a contact lens was stuck in his eye (*id.*). Mountjoy alleges he went to an eye doctor on September 27, 2017 (*id.*). He alleges the doctor irrigated the eye but found no contact or other foreign body (*id.*). Mountjoy alleges he returned to the eye doctor for the same problem, but "to no avail" (*id.* at 8–9). Mountjoy insists that there is a contact lens lodged in the crevice of his eye, and that it needs to be "vacuumed out" (*id.*). He alleges he went to sick-call seven times regarding the contact in his eye, but nothing was done (*id.* at 8). Mountjoy alleges he repeatedly filed grievances regarding the issue with his eye, but Defendant HSA

Denmark denied his requests for another eye examination (*id.* at 9). Mountjoy admits, however, that he signed two forms to be seen by an eye doctor, and when he was asked to sign a third, he "blatantly refuse[d]" because it was blank (*id.*).

The exhibits to Mountjoy's Complaint show that on May 8, 2018, he filed an informal grievance, Grievance Log #224-1805-0047, complaining that a contact lens had been stuck in his eye for eighteen months (ECF No. 1 at 18, 44). Mountjoy complained that the vision in his eye was blurry, and his eye was dry (*id.*). He complained that he had been seen for this problem six times (*id.*). HSA Denmark responded to Mountjoy's grievance, stating he was seen by an optometrist on September 27, 2017, and received an eye examination that revealed no foreign objects in his eyes (*id.*). Denmark advised Mountjoy to address any other issues by accessing sick call (*id.*).

On June 4, 2018, Mountjoy was seen in sick call by a nurse for a complaint of a contact lens stuck in his eye (ECF No. 1 at 44). The nurse examined the eye and noted that no contact lens was visible, and there was no redness or edema of the eye (*id.*).

In August of 2018, Mountjoy filed a formal grievance, Grievance Log #1808-218-076, complaining about being charged a co-pay for the medical visit regarding

Case No.: 3:20cv4685/LAC/EMT

the contact lens (ECF No. 1 at 22). Defendant Dr. Laubaugh advised Mountjoy that he was appropriately charged a co-pay (*id.* at 23).

In September of 2018, Mountjoy filed a formal grievance, Grievance Log #1809-218-055, asking why he was asked to sign a consultation request to see an eye doctor, when he had already been seen twice by an eye doctor and four times by institutional medical staff regarding the problem, and nothing was done (ECF No. 1 at 26). The grievance was returned by the Regional Medical Director without action as improperly filed (*id.* at 27).

In January of 2019, Mountjoy submitted a formal grievance, Grievance Log #1901-218-065, again complaining that a contact lens had been lodged in his eye for two years (ECF No. 1 at 32). HSA Denmark denied the grievance on the ground that the issue had been addressed in prior informal grievances (*see id.* at 46).

In February of 2019, Mountjoy submitted a formal grievance, Grievance Log #1902-218-001, requesting use of "the vacuum-tube [sic]" to remove the contact lens from his eye (ECF No. 1 at 28). Dr. Laubaugh returned the grievance without processing on the ground that the issue had been addressed in multiple grievances (*id.* at 29).

In May of 2019, Mountjoy submitted a formal grievance, Grievance Log #1905-218-034, requesting to see an eye doctor (*see* ECF No. 1 at 43). HSA Denmark advised Mountjoy to utilize sick call (*id.*).

Mountjoy's factual allegations, accepted as true, fail to state a claim under either the objective or subjective component of the Eighth Amendment standard. Mountjoy's factual allegations fail to plausibly suggest he had a serious medical need for additional treatment for his eye. Further, his allegations fail to plausibly suggest that either Dr. Laubaugh or HSA Denmark acted with deliberate indifference. Mountjoy was seen by an eye specialist not once but twice for his complaint, and he was also seen by an institutional nurse. The medical providers concluded there was no contact lens or other foreign body in his eye. Moreover, Mountjoy was apparently offered yet another consultation with an eye specialist, but he refused to complete the necessary paperwork. Mountjoy's disagreement with the diagnosis of his medical providers and his desire for additional treatment (i.e., that his eye be vacuumed) do not state a plausible claim of deliberate indifference. Therefore, his Eighth Amendment medical claim should be dismissed with respect to this issue.

### B.     Allergic Reaction

Mountjoy believes he suffered an allergic reaction to a drug (specifically, Lyrica) which he believes he ingested by eating a banana injected with the drug (*see* ECF No. 31 at 5–7, 11).  Mountjoy's factual allegations with respect to this alleged allergic reaction are confusing, but the court will do its best to relate them here.

Mountjoy alleges that on June 2, 2018, he was placed in confinement, and the next day he suffered swelling, weakness, and severe pain in his joints (ECF No. 31 at 7).  Mountjoy alleges the symptoms started at his left ankle, spread to his left knee, traveled to his right ankle, spread to his right knee, spread to his right wrist, and then ended at his left wrist (*id.*).  Mountjoy alleges he went to the library and researched the symptoms, and determined they were symptoms of vasculitis (ECF No. 1 at 6; ECF No. 31 at 7).  Mountjoy alleges he stopped eating food from the cafeteria, and the problem went away (ECF No. 1 at 5–6; ECF No. 31 at 7).  However, he alleges he now suffers from a periodic sore throat and rash (ECF No. 1 at 8; ECF No. 31 at 7).  Mountjoy alleges he went back to the library and researched those symptoms, and determined they were symptoms of rheumatic fever (*id.*).

Mountjoy alleges he is allergic to sulfa drugs, as well as Neurontin, and Lyrica (ECF No. 31 at 5–6).  The medical records attached to Mountjoy's Complaint

document his allergies to sulfa drugs and Neurontin (ECF No. 1 at 44–46). Mountjoy alleges he suspects the toxin/allergen was administered to him via an injected banana (ECF No. 31 at 11). Mountjoy alleges he requested blood work to determine the exact allergen or toxin that caused the reaction, but his request was denied (*id.* at 8). He alleges he filed in excess of twelve grievances, but HSA Denmark refused his requests to see a doctor (*id.* at 7, 11). Mountjoy alleges he spoke to Dr. Laubaugh on three different occasions, but Dr. Laubaugh addressed only Mountjoy's cholesterol instead of "the more serious problem at hand of rheumatic fever" (*id.* at 9–11).

The exhibits to Mountjoy's Complaint show that on June 28, 2018, he filed an informal grievance, Grievance Log #224-1807-0024, requesting blood work to determine why he was experiencing "burning of lower joints and ridgetness [sic] of limbs, along with weakness of both legs" (ECF No. 1 at 19, 45). HSA Denmark advised Mountjoy to access sick call to discuss his request for blood tests with nursing staff (*id.*).

In July of 2018, Mountjoy submitted a formal grievance, Grievance Log #1807-218-093, complaining of weakness in his ankles and knees (ECF No. 1 at 20). Mountjoy stated he experienced these symptoms when he took Neurontin or Lyrica

(*id.*). Mountjoy stated he had been seen by nurses three times but they said nothing was wrong (*id.*). Mountjoy requested to be seen by a doctor (*id.*). Doctor Laubaugh responded to the grievance on July 31, 2018, informing Mountjoy that he had a follow-up appointment scheduled with his medical provider to discuss these issues (*id.*).

In August of 2018, Mountjoy submitted another formal grievance, Grievance Log #1808-218-076, complaining about being charged co-pays for two medical visits even though medical staff refused to draw blood for a blood test (ECF No. 1 at 22). Dr. Laubaugh advised Mountjoy that he was appropriately charged the co-pays (*id.* at 23). Mountjoy appealed to the FDOC's Central Office (*id.* at 24). The Central Office denied the appeal, noting that Mountjoy was seen by a doctor on August 9, 2018, and advising Mountjoy that it was the doctor's responsibility to determine the appropriate diagnostic testing, lab work, or other treatment regimen (*id.*).

In April of 2019, Mountjoy submitted another formal grievance, Grievance Log #1904-218-090, complaining that he had continuously asked to see a doctor because he was displaying symptoms of rheumatic fever (ECF No. 1 at 30). Mountjoy stated he had been to medical four or five times and was told he would be

Case No.:  3:20cv4685/LAC/EMT

seeing a doctor, but he never was seen by one (*id.*).  Dr. Laubaugh responded that there was no documentation in Mountjoy's medical record indicating that he had accessed sick call since August 6, 2018, and at that visit, Mountjoy had complained only about his eye (*id.* at 31).  Dr. Laubaugh advised Mountjoy to access sick call regarding the issue (*id.*).

Mountjoy's allegations again fail to state a plausible claim of deliberate indifference.  HSA Denmark's advising Mountjoy to address his concerns with his medical providers through sick call, instead of through the administrative grievance process, was a reasonable response to Mountjoy's request for a blood test.

With respect to Dr. Laubaugh, Mountjoy does not allege that during any of his visits with Dr. Laubaugh (or any health provider, for that matter) he was exhibiting swelling, weakness, or pain in his ankles, knees, or wrists, or that he was exhibiting any other signs or symptoms of an allergic reaction, vasculitis, or rheumatic fever.  The mere fact that Mountjoy desired diagnostic testing does not mean that Dr. Laubaugh was deliberately indifferent by failing to provide it.  *See Harris*, 941 F.2d at 510.

Mountjoy's factual allegations fail to plausibly suggest that Dr. Laubaugh or HSA Denmark had subjective knowledge that Mountjoy faced a risk of serious harm

if he was not provided diagnostic testing. Therefore, Mountjoy has not stated a plausible Eighth Amendment claim with respect to this issue.

### C. Centurion's Liability

Mountjoy seeks to hold Centurion liable for the alleged deliberate indifference of Dr. Laubaugh and HSA Denmark. However, because neither of the individual Defendants committed an Eighth Amendment violation, Mountjoy cannot establish liability on the part of Centurion. *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.").

## V. CONCLUSION

Mountjoy's factual allegations fail to state a plausible Eighth Amendment claim against Dr. Laubaugh or HSA Denmark, and there is no indication that providing Mountjoy another opportunity to amend his complaint would produce a pleading which states a plausible constitutional claim. Therefore, the undersigned recommends that Mountjoy's claims be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

Accordingly, it respectfully **RECOMMENDED**:

1. That Plaintiff's claims be **DISMISSED with prejudice** for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

2. That the clerk of court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida, this 11th day of March 2021.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**